

# NUMBER 13-26-00094-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JENNIFER LYNN ROBELLO,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

## ON APPEAL FROM THE 19TH DISTRICT COURT
## OF MCLENNAN COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Peña, West, and Fonseca
### Memorandum Opinion by Justice Fonseca

After her deferred-adjudication community supervision was revoked, appellant Jennifer Lynn Robello was convicted of theft of a person, a state-jail felony, and was sentenced to twenty-four months in state jail. *See* TEX. PENAL CODE § 31.03(e)(4)(B). On appeal, Robello argues by one issue that her due process rights were violated because

she appeared at the adjudication hearing via videoconference. We affirm.[1]

## I. BACKGROUND

A McLennan County grand jury returned an indictment accusing Robello of committing aggravated robbery, a first-degree felony, *see id.* § 29.03, on or about June 30, 2022. On January 23, 2024, pursuant to an agreement with the State, Robello pleaded guilty to theft of a person. The trial court deferred adjudication and placed Robello on four years' community supervision.

The State filed a "Motion to Adjudicate Guilt" on August 13, 2025, alleging that Robello violated the terms and conditions of her community supervision by, among other things, committing three new criminal offenses, failing to submit to drug testing, failing to remain in Bell County, and failing to pay various costs and fees. The State later filed an amended motion adding allegations that Robello had committed three other new criminal offenses.

A hearing was held on the State's amended motion to adjudicate on December 11, 2025. At the outset of the hearing, the trial court noted that Robello was "appearing via Zoom" but that her counsel was present in the courtroom. Robello confirmed that she had reviewed all thirteen allegations set forth in the State's amended motion with her attorney, and that she understood the allegations. The following colloquy then occurred on the record:

> THE COURT: You have a right to plead true or not true. Listen as the State reads the allegations.
>
> [Defense counsel]: Your Honor, we will waive the reading.

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

|  |  |
|---|---|
|  | And, Ms. Robello, can you hear me? |
| [Robello]: | Yes, sir. |
| [Defense counsel]: | We've got a plea agreement with . . . the State to recommend 20 months if you'll plead true to 1 through 13. So that's what I would recommend as opposed to pleading true to the ones we had previously discussed. Is that agreeable? |
| [Robello]: | No, sir. |
| [Defense counsel]: | Okay. And, Judge, we'll waive the reading. And she would like to plead true to 4, 6, 7 and 9 through 13. |

The trial court then reviewed each alleged violation in the State's amended motion and asked Robello whether they were true. Robello pleaded true to allegations number four (that she failed to remain in Bell County), six (that she committed the offense of resisting arrest in Bell County on or about October 20, 2025), seven (that she committed the offense of interference with public duties in Bell County on or about October 20, 2025), nine (that she failed to pay $1,269 in court costs), ten (that she failed to pay $1,240 in monthly probation fees), and twelve (that she failed to pay $500 in restitution). She pleaded not true to the remaining allegations.

The trial court found allegations four, six, seven, nine, ten, and twelve true; granted the State's amended motion to adjudicate; and sentenced Robello as set forth above. This appeal followed.[2]

## II.   APPLICABLE LAW

The right to be present in the courtroom at every stage of trial is guaranteed by the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth

---

[2] On April 7, 2026, Robello filed with this Court a "Motion to Disregard the Trial Court's April 6, 2026 Judgment Adjudicating Guilt Nunc Pro Tunc." The motion did not include a copy of the alleged nunc pro tunc judgment, nor did it explain whether or how the nunc pro tunc judgment differed from the judgment on appeal. In any event, there is no nunc pro tunc judgment in the appellate record. We deny the motion.

and Fourteenth Amendments. *Hughes v. State*, 691 S.W.3d 504, 513 (Tex. Crim. App. 2024). A defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–106 (1934)). This right has been held to apply to a hearing, like the one at issue here, on a motion to adjudicate guilt following the imposition of deferred-adjudication community supervision. *See Hughes*, 691 S.W.3d at 514 ("Although a hearing on a motion to adjudicate guilt is not a formal, independent prosecution of an offense, charges are nevertheless levied against the defendant, and the hearing on the motion to adjudicate guilt is his one opportunity to defend against the charges. A hearing on a motion to adjudicate guilt would not be fair and just if the defendant is excluded.").

A defendant may waive her due process right to be present, but the right will not be forfeited by mere inaction or silence, and a violation thereof may be raised for the first time on appeal. *Id.* at 519 (holding that the due process right to be present is a "*Marin* category two waivable right"); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (categorizing rights as either (1) mandatorily enforced, (2) subject to waiver, or (3) subject to forfeiture).

Constitutional error must be reversed unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). It is the State's burden to show harmlessness. *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020). In evaluating harm from the violation of a defendant's due process right to be present at a proceeding, we consider both the "harmless error

4

test," which "seeks to determine the effect of the defendant's absence on the outcome of the proceeding," and the "reasonably substantial relationship test," which "seeks to determine the effect of the defendant's absence on the advancement of his defense." *Hughes*, 691 S.W.3d at 523.

### III.   DISCUSSION

Robello relies entirely on *Hughes*, in which the appellant also appeared at an adjudication hearing via Zoom and then complained on appeal that his constitutional right to be present was violated. *Id.* at 508. At the hearing, only defense counsel and the trial court were physically present in the courtroom, and "[s]everal times when Appellant tried to speak during the hearing, the trial court ordered that Appellant be muted." *Id.* On one occasion, the trial court ordered appellant to be muted after appellant had remarked that a witness was lying. *Id.* at 510.

The Texas Court of Criminal Appeals held that appellant's due process right to be present was violated, reasoning as follows:

> Ordinarily, when all of the parties are physically present, a defendant's disruptions would earn rebukes and orders to be quiet, such as those that Appellant twice earned over the Zoom teleconference without being muted. The difference however is that in the ordinary case a defendant that is told to be quiet would be physically next to defense counsel and could have quietly talked to counsel or poked and prodded counsel, passed notes, or otherwise indicated to counsel that he wanted to talk. Even a defendant that must be bound and gagged can still find a way to make his desire to talk to counsel known.
>
> But in Appellant's Zoom teleconference, that ability to somehow communicate with counsel was lost when the trial court had him muted. Appellant was reduced to a silent portrait of a man. When the trial court muted Appellant he was effectively removed from the virtual courtroom and placed into a separate virtual courtroom where he could only watch a stream of the proceedings. He became little more than a spectator in a proceeding that could—and in fact did—result in his loss of liberty.

*Id.* at 522; *see id.* at 523 ("Mere presence—physical or virtual—without an ability to

participate in the proceeding is hardly the presence required by the Constitution."). The Court then proceeded to conclude that appellant was harmed by the error, specifically citing the instance where appellant was muted after audibly disputing the credibility of a witness. *Id.* at 522 ("There was no showing that whatever Appellant was trying to say would not have aided counsel in objecting to [the witness]'s testimony or in cross-examining [the witness]. Rather, if Appellant had information to show [the witness] was lying, that would have helped contradict [the witness]'s version of events or impeach [his] credibility.").

The State argues that Robello's due process right to be present at the adjudication hearing was satisfied by her Zoom appearance. It further argues that, to the extent her appearance via videoconference constituted error, the error was harmless beyond a reasonable doubt.

Even assuming the court erred by not requiring Robello to be physically present in the courtroom, we agree with the State that the error would not be reversible. After summarizing *Hughes*, Robello sets forth her entire argument, as to both error and harm, as follows:

> Neither the Clerk's Record nor the Supplemental Clerk's Record herein includes a written waiver by Robello of her right to be physically present at her adjudication hearing. Nor did she orally waive that right at the hearing. Robello argues that the State cannot show harmless error. She asked to be continued on probation. Yet the trial court adjudicated her guilt and assessed the highest sentence possible.

Robello did not cite any portion of the record in arguing that she was harmed. *See* Tex. R. App. P. 38.1(i). In her reply brief, Robello argues that due to her remote appearance, she "was forced to disagree with her trial counsel in front of the judge and opposing counsel," and she speculates that her "open disagreement with trial counsel negatively

predispose[d] the judge" and "affect[ed] the judge's decision to sentence her to the maximum possible sentence."

We conclude the State met its burden to show beyond a reasonable doubt that Robello was not harmed by the alleged error. *See id.* R. 44.2(a); *Haggard*, 612 S.W.3d at 328. As the State observes, Robello was able to freely communicate with her counsel at the December 11, 2025 hearing, was able to reject a proposed plea agreement, and was permitted to address the trial court directly with respect to the allegations she disputed. Importantly, unlike in *Hughes*, Robello was never muted, and the record demonstrates that neither her ability to confer with counsel nor her ability to defend against the charges were ever compromised in any way. *See Hughes*, 691 S.W.3d at 523 (noting "[p]resence is a means to an end—a defendant's right to be present is important because it accords him a full opportunity to defend against the charges against him").

Finally, Robello pleaded true to several violations of her probation conditions, and she has never suggested any reason for why her physical presence at the adjudication hearing would have changed that result. *See, e.g.*, *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (noting that "proof of a single violation will support revocation"); *Fenner v. State*, 571 S.W.3d 892, 894 (Tex. App.—Waco 2019, pet. ref'd).

We overrule Robello's issue on appeal.

### IV.    Conclusion

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed on the
4th day of June, 2026.